UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**THOMAS L. BURKHARD, et al.,**

        **Plaintiffs,**

-vs-                                          **Case No.  3-:04-CV-032**

**CONTINENTAL CASUALTY COMPANY, et al.,**

                                                    **Judge Thomas M. Rose**

        **Defendants.**

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (Doc. #6) AND TERMINATING THE CASE**

Thomas L. Burkhard, Diana Burkhard, William D. Burkhard, Betty L. Burkhard, Thomas L. Burkhard II, Thomas L Burkhard as co-executor of the Estate of Donald Bishop and John N. Smoot as co-executor of the Estate of Donald Bishop (collectively the "Plaintiffs") claim to be the beneficiaries of a life insurance policy that insured the life of Pamela Bishop ("Bishop"). Bishop was employed by the Key Bank Corporation and was insured under Policy Number SR-83104293 (the "Policy"). The Policy provided accidental death and dismemberment insurance coverage to active, full-time and part-time employees of Key Bank and was issued by Defendant Continental Casualty Company and/or Defendant CNA Insurance Company (collectively "Continental Casualty").

Pamela Bishop died on July 23, 2001, in an automobile accident in Clark County, Ohio. The Plaintiffs now seek declaratory judgment that they are entitled to the proceeds of the Policy in the amount of $250,000 as well as an award of pre and post judgment interest.

Now before the Court is Continental Casualty's Motion for Judgment On the Merits (Doc. #6) hereinafter termed the Motion for Judgment On the Administrative Record. This Motion is fully briefed and is now ripe for decision.

In addition, the Administrative Record ("AR") of this matter has been filed and is now before the Court (Doc. #5) and the Parties agree that this dispute is governed by the Employee Retirement Income Security Act ("ERISA") (Doc. #3.) . The standard of review for claims to recover benefits due under the terms of a plan subject to ERISA will first be set forth followed by an analysis of the Motion.

## STANDARD OF REVIEW

When an ERISA plan administrator's decision to deny benefits is brought before a court, the court engages in a de novo review of the decision unless the benefit plan gives the plan administrator discretionary authority to determine eligibility or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan administrator is given no discretionary authority by the plan, review by the court is *de novo* with respect to both the factual determinations as well as the legal conclusions of the plan administrator. *Id.* Where there is a clear grant of discretion, the court applies an arbitrary and capricious standard of review to the administrator's decision to deny benefits. *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994), *cert. denied*, 513 U.S. 1058 (1994). Finally, absent a procedural challenge to the administrator's decision, the court's review is limited to the administrative record of the benefit determination. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).

The Sixth Circuit does not require a plan to use any magic words such as "discretionary" to create discretionary authority for a plan administrator in administering the plan. *Johnson v. Eaton Corp.*, 970 F.2d 1569, n.2 (6th Cir. 1992). Yet the Sixth Circuit has consistently required "a clear grant of discretion [to the administrator]" before replacing its duty to engage in de novo review with the arbitrary and capricious standard. *Wulf*, 26 F.3d at 1373.

## ANALYSIS

In this case, there is no dispute that the Policy confers discretion on Continental Casualty to interpret plan provisions. (POL 0036.) Therefore, the arbitrary and capricious standard of review applies.

The Plaintiffs initially indicate that they do not contend that Continental Casualty arbitrarily and capriciously denied them benefits pursuant to the Policy. However, the Plaintiffs go on to argue that the conclusions and opinions of Continental Casualty are subjective interpretations by the author of the insurance policy and that the Plaintiffs do not agree with Continental Casualty's conclusions and opinions. While not specifically stated, the Plaintiffs' argument can only be interpreted to mean that the Plaintiffs believe that Continental Casualty's decision was arbitrary and capricious.

When applying the arbitrary and capricious standard, a court is to decide if the plan administrator's decision was rational in light of the plan's provisions. *Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health and Welfare Trust Fund*, 203 F.3d 926, 933-34 (6th Cir. 2000) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988), *cert. denied*, 488 U.S. 826 (1988)). A decision is not arbitrary and capricious if it is based upon a reasonable interpretation of the plan. *Johnson*, 970 F.2d at 1574. Also, when applying arbitrary

and capricious review, courts affirm administrative decisions "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome …." *Davis By and Through Farmers Bank and Capital Trust Co. Of Frankfort, Kentucky v. Kentucky Finance Companies Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989), *cert. denied*, 495 U.S. 905 (1990).

In addition to a reasonable interpretation of the plan, the administrator's decision must be supported by evidence. *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998). The decision is upheld if it is "the result of a deliberate principled reasoning process and if it is supported by substantial evidence." *Id.* at 520 (quoting *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

The arbitrary and capricious standard requires the Court to consider whether Continental Casualty used a deliberate principled reasoning process and if the process used is supported by evidence. Continental Casualty may not arbitrarily refuse to credit reliable evidence presented by the Plaintiffs. *Black and Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). However, the Court's consideration of Continental Casualty's decision is limited to a review of the evidence available to Continental Casualty at the time the final decision was made. *Miller v. Metropolitan Life Insurance Company*, 925 F.2d 979, 986 (6th Cir. 1991). Therefore, Continental Casualty's reasoning process will be analyzed with regard to the evidence available to it.

The Policy is the first important piece of evidence. The issues in this case focus on an exclusion to the Policy. Initially, the Policy covers "bodily injury caused by an accident which occurs while the Insured Person is covered under this policy and that results, directly and independently of all other causes, in loss covered by this policy." (POL 0024.) The Policy then

specifically excludes coverage for any "loss caused by, contributed to or resulting, directly or indirectly, from injury sustained while the Insured is: …Legally intoxicated or under the influence of Alcohol as defined in the jurisdiction in which the accident occurs." (POL 0015-16.)

Bishop, according to the Plaintiffs, was involved in an automobile accident on July 20, 2001, at approximately 7:00 a.m. when she swerved to miss a slow moving truck, lost control, crossed over the grass median and hit another car head on." (AR 0052.) She was listed as dead at the scene. (AR 0056.) The road conditions were listed as dry and all the tires on her vehicle had good tread. (AR 0057, 0069.)

On August 21, 2001, Bishop's father submitted a claim for benefits to Continental Casualty. (AR 0052.) On October 1, 2001, Continental Casualty advised Pamela Bishop's father that his claim for benefits under the Policy had been denied. (AR 0027-28.) Continental Casualty denied coverage because the Policy does not cover loss from injury sustained while the insured is legally intoxicated or under the influence of alcohol in Ohio and the record indicates that Pamela Bishop's blood alcohol content was above Ohio's limit when she was driving. (Id.)

Continental Casualty's decision was appealed on March 22, 2002. (AR 0008-9.) No further evidence was submitted with the appeal. (Id.) On May 9, 2002, Continental Casualty's Appeals Committee upheld the denial of benefits. (AR 0002-3.) The analysis next turns to Continental Casualty's reasoning.

The Traffic Crash Report submitted to Continental Casualty indicates that Pamela Bishop tested positive for alcohol. (AR 0066.) The Coroner tested her at .26 by eye fluid. (Id.) Further, the Death Certificate listed "Ethanol Intoxication" under "Other significant conditions contributing to death but not resulting in the underlying cause." (AR 0044.)

The Coroner's Findings of Fact and Verdict reported findings of "Alcohol (Eye fluid) - .26%." (AR 0032.) The toxicology report confirmed 0.26% alcohol level. (AR 0033.)

In addition, the eyewitness reports show that Bishop was driving erratically and at an excessive rate of speed. One eyewitness indicated that she crossed the median into oncoming traffic "suddenly." (AR 0072.) Another witness said that Bishop came up "behind me real fast. I know she was doing way over the speed limit. I will swear on my life on that." (AR 0073.) Another witness reported that Pamela Bishop "went into the median at a sharp angle. The car went through the median and hit a eastbound car." (AR 0075.) This same witness thought Bishop "made a left turn into the grass." (AR 0075.) A final witness indicated that she "hit the rear end of a skid truck, lost control and crossed the median" and he thought she was "doing 90" [mph]. (AR 0076.)

The blood alcohol content limit for operating a motor vehicle in Ohio at the time of the accident was 0.10%. O.R.C. §4511.19(A)(1). Bishop's blood alcohol content was almost three times the limit under which Ohio presumes a person is driving under the influence. Therefore, Continental Casualty, based upon the evidence from the Traffic Crash Report, the Death Certificate, the Coroner's Report, the Toxicology Report, and the eye-witness reports concluded that Bishop was legally intoxicated and under the influence of alcohol when she was driving in Ohio.

The Policy covers bodily injury but excludes coverage for any loss "caused by, contributed to or resulting, directly or indirectly, from injury sustained while the Insured is:…Legally intoxicated or under the influence of Alcohol as defined in the jurisdiction in which the accident occurs." (POL 0015-16.) From the evidence and based upon its interpretation of this

Policy language, Continental Casualty determined that Bishop's death was excluded from Policy coverage.

Continental Casualty gathered all of the relevant, available evidence and could reasonably conclude from that evidence that Bishop was driving while legally intoxicated at the time of her fatal accident. Further, Continental Casualty's interpretation of the Policy language and its application of the facts to that language was reasonable. Therefore, Continental Casualty's decision to deny benefits is the result of a deliberate principled reasoning process and is supported by substantial evidence. As a result, Continental Casualty's decision is not arbitrary or capricious.

The Plaintiffs argue that Continental Casualty did not reasonably conclude that their claim was excluded. The reason they give for Continental Casualty's allegedly unreasonable conclusion is that there is an ambiguity in the plan limitations. However, the Plaintiffs do not identify the specific language in the Policy that they argue is ambiguous. Presumably, it is the language that excludes a "loss caused by, contributed to or resulting, directly or indirectly, from injury …" In support of this argument, the Plaintiffs cite several cases requiring an ambiguity to be strictly construed against the insurer and liberally in favor of the policy holder. In other words, the Plaintiffs would have the Court apply the state-law doctrine of *contra proferentum* to the Policy language when determining if Continental Casualty's decision to deny benefits was arbitrary or capricious.

However, the specific language which the Plaintiffs argue is ambiguous is irrelevant in this ERISA action. In this case there is no dispute that ERISA applies and ERISA preempts

application of state law. 29 U.S.C. §1144(a); *Metropolitan Life Insurance Company v. Massachusetts*, 471 U.S. 724, 732 (1985).

Further, there is no dispute that the arbitrary and capricious standard of review applies. Under the arbitrary and capricious standard of review, Continental Casualty's interpretations of the Policy are to be given deference by this Court. *Cates v. Metropolitan Life Insurance Company,* 149 F.3d 1182, 1998 WL 385897 at **2 (6th Cir. 1998). Thus, applying the state-law doctrine of *contra proferentum* would divest Continental Casualty of the discretion provided to it under ERISA.

The Sixth Circuit has examined whether the state-law doctrine of *contra proferentum* should be applied where the claim's administrator's decision is subject to an arbitrary and capricious review. *Mitchell v. Dialysis Clinic, Inc.*, 18 Fed.Appx. 349, 2001 WL 1006291 (6th Cir. 2001). The *Mitchell* Court found that plan administrators vested with discretionary authority are given "great leeway in interpreting ambiguous terms." *Id.* at **2. Further, when reviewing previous decisions implying that a court could apply *contra proferentum*, the *Mitchell* Court concluded that it did "not believe that through these statements this Circuit has established a rule of interpretation that would completely contradict the deference paid to an administrator's decision. *Id.* at **3. Since *Mitchell*, two district courts in the Sixth Circuit have specifically concluded that the doctrine of *contra proferentum* is not applicable in ERISA cases where the arbitrary and capricious standard is used. *Muse v. Central States, Southeast & Southwest Areas Health & Welfare & Pension Funds*, 227 F.Supp.2d 873, 879 (S.D.Ohio 2002); *Peach v. Ultramar Diamond Shamrock*, 229 F.Supp.2d 759, 766 (E.D.Mich. 2002), *aff'd*, 109 Fed.Appx. 711, 2004 WL 1738093 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 1641 (2005).

The Plaintiffs next argue that the exclusion at issue is not applicable because the coroner's report found the cause of death as blunt trauma and the exclusion at issue requires that the insured's death be proximately caused by intoxication. However, the Policy does not require that Continental Casualty find that the proximate cause of Bishop's death was intoxication. The Policy requires that an insured's death is excluded from coverage if it was "caused by, contributed to or resulting, directly or indirectly, from injury sustained while the insured is: Legally intoxicated or under the influence of alcohol as defined in the jurisdiction in which the accident occurs." (POL 0016). Continental Casualty reasonably concluded from the evidence before it that Bishop's death was either contributed to or caused by injuries sustained while she was legally intoxicated. Further, no evidence has been identified in the administrative record to suggest that intoxication did not, at the very least, indirectly contribute to the cause of death.

The Plaintiffs cite non-ERISA cases from the States of Washington, Florida and Colorado as support for their claim that there is a lack of evidence regarding cause of death. However, as set forth hereinbefore, such state law is preempted by ERISA.

Finally, the Plaintiffs argue that nothing in the Administrative Record proves that Bishop was under the influence of alcohol or legally intoxicated at the time of her accident. The basis for this argument is Plaintiffs' contention that the blood alcohol test was improperly performed because the use of eye fluids is not recognized in Ohio as a reliable method of determining the level of intoxication.

First, the Plaintiffs do not identify any evidence in the Administrative Record that the blood alcohol testing was improperly performed. Again, based upon the evidence before it,

Continental Casualty reasonably concluded that Bishop's death was either contributed to or caused by injuries sustained while she was legally intoxicated.

Aside from what is in the Administrative Record and assuming that state law would not be preempted by ERISA, Ohio recognizes the testing of all bodily fluids and does not limit testing to blood and urine. Section 4511.19(D)(1) of the Ohio Revised Code specifically states that a court "may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis…" Further, although the Ohio Administrative Code, as argued by the Plaintiffs, may prescribe certain procedures for the collection of blood and urine on living individuals, such procedures do not suggest that post-mortem eye fluid testing is not permissible under Ohio law.

## CONCLUSION

It is undisputed that the Policy under which the Plaintiffs seek benefits is governed by ERISA and that Continental Casualty's decision to deny benefits is subject to an arbitrary and capricious standard of review.  Continental Casualty gathered all of the relevant, available evidence and could reasonably conclude from that evidence that Pamela Bishop was driving while legally intoxicated at the time of her fatal accident. Continental Casualty then applied the evidence to a reasonable interpretation of the Policy language. Therefore, Continental Casualty's decision to deny benefits is the result of a deliberate principled reasoning process, is supported by substantial evidence and is based upon a reasonable interpretation of the Policy. As a result, Continental Casualty's decision is not arbitrary or capricious and Continental Casualty's Motion for Judgment on the Administrative Record is GRANTED.

Since judgment has been declared on Continental Casualty's behalf and against the Plaintiffs, nothing further remains to be adjudicated. Therefore, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Thirty-First day of May, 2005.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record